ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2011 MAR -4 PM 3:56

DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TRAVELHOST, INC., a corporation<br><br>Plaintiff,<br><br>vs<br><br>JAMES N. FORD and LAUREN L. FORD, Husband and Wife, and LJF MEDIA, LLC<br><br>Defendants. | Civil Action No. 3-11CV-453-L<br><br>47520<br><br>COMPLAINT |

## COMPLAINT

Plaintiff TRAVELHOST, Inc. ("TRAVELHOST"), by and through its counsel, for its Complaint against JAMES N. & LAUREN L. FORD, husband and wife ("Ford Defendants"), and LJF MEDIA, LLC ("LJF") (hereafter collectively "Defendants"), alleges as follows:

### I. PARTIES

1. TRAVELHOST is a Texas corporation with its principal office and place of business at 10701 Stemmons Frwy, Dallas, Texas 75220. The name TRAVELHOST and the logo "TH" are registered trademarks belonging to TRAVELHOST.

2. LJF Media, LLC ("LJF") is a limited liability corporation existing under the laws of the State of Indiana with its principal place of business in Valparaiso, Indiana 46385. LJF may be served with process by serving its registered agent, James Ford, 32 Kincraig Court, Valparaiso, Indiana 46385.

ORIGINAL COMPLAINT  1

3. Defendants James Ford & Lauren Ford are individual residents of the State of Indiana residing at 32 Kincraig Court, Valparaiso, Indiana 46385 and who may be served with process at this address.

## II. JURISDICTION AND VENUE

4. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because this case involves a controversy between parties of diverse citizenship and the amount in controversy exceeds $75,000.

5. Venue is proper in this District pursuant to the Forum Selection Clause contained in the contract entered into with TRAVELHOST. The contract specifically provides that "[v]enue over any disputes between the parties of this Agreement shall be solely and exclusively in Dallas, Texas, and any lawsuit between the parties to this Agreement shall be instituted and resolved solely and exclusively in a court of competent jurisdiction located in Dallas, Texas."

6. Venue is also proper in this District under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## III. NATURE OF THE ACTION

7. This lawsuit arises out of a contract entered into between the parties whereby, *inter alia*, TRAVELHOST licensed to the Defendants the use of its trademarks, brand recognition and goodwill associated with its extensive and long-standing business operations in serving the needs of the traveler through TRAVELHOST Magazine and its family of other publications, online products and services. The Defendants took full advantage of all of the contractual rights and benefits granted by TRAVELHOST for over 1½ years, during which time, acting as the exclusive authorized representatives of

TRAVELHOST of Northern Indiana, they established distribution arrangements with local hotel properties, fostered relationships with local retailers/advertisers offering goods and services to travelers, and distributed 5 separate quarterly issues of the local edition of TRAVELHOST Magazine -- keeping 100% of all local advertising revenues.

8. TRAVELHOST strictly lived up to each and every one of its contractual obligations. In the early part of 2010, and unbeknownst to TRAVELHOST, the Defendants commenced plans to launch a competitive publication within their designated area. During this same time-frame, a production packet was due from Defendants for the April 18, 2010, quarterly issue of TRAVELHOST of Northern Indiana. Rather than submitting the packet and living up to their contractual obligations, the Defendants commenced distribution of the Spring 2010 issue of that competitive publication. As soon as possible upon learning about the competitive publication, TRAVELHOST demanded that Defendants cease and desist their activities which were in direct violation of a contractual non-competition provision. Defendants refused.

9. The actions of Defendants have resulted in the absence of a local edition of TRAVELHOST Magazine in the marketplace and concomitant monetary damages. They also have caused irreparable harm to the TRAVELHOST brand and reputation within the local market, and, moreover, the mere presence in the market of Defendants' competitive publication (especially where, as here, run by the same individuals representing TRAVELHOST) will make it immeasurably more difficult and costly, if not impossible, for TRAVELHOST to re-establish goodwill in the local communities, to obtain distribution of the publication, to establish relationships with local retailers/advertisers, etc. Given those circumstances, it will be far more time-consuming

and expensive to find new representatives willing to take on this challenge, not to mention the time and money required to be expended by TRAVELHOST to attempt to overcome the obstacles created by the Defendants' competitive actions. TRAVELHOST has advertised the market availability since the termination of the parties' contractual relationship without success.

## IV. FACTUAL BACKGROUND

10. Defendant James Ford entered into a Distributorship Agreement and an Optional Associate Publisher Agreement (collectively "Agreements") with TRAVELHOST effective August 7, 2008. Pursuant to the Distributorship Agreement, Defendant agreed, *inter alia*, to purchase from TRAVELHOST and to accept delivery of not less than 7,500 copies of each quarterly issue of the Northern Indiana local edition of TRAVELHOST Magazine. Defendant James Ford also agreed to use his best efforts to distribute the publication and to sell advertising within his designated area which consisted of the Gary/South Bend, Indiana metropolitan area.

11. Subsequent to execution of the respective Agreements, Defendant James Ford traveled to TRAVELHOST's headquarters in Dallas to attend the multi-day BPS (Best Practices Seminar) classes on August 13, 2008. At BPS, Defendant Ford received, among other information and materials: a) specific information relating to the layout of the magazine and the proper manner of preparing and submitting a production packet; b) TRAVELHOST's confidential Production Manual; c) proprietary best practices gleaned from other distributors and associate publishers over the years; d) general sales guidance and tips; e) proprietary forms and information for use in connection with obtaining distribution and advertising business; and f) access to miscellaneous other proprietary

information useful in connection with production of the magazine, distribution of the magazine, and the sale of advertising space in the magazine. Information also was shared regarding the TRAVELHOST existing web site and planned upgrades to the web site, a password was provided for obtaining access to the associate publisher's room containing various confidential and proprietary information not available to the general public, and instructions were provided for populating and modifying information on that portion of the web site dedicated to each distributor's applicable local market. In addition to TRAVELHOST Magazine, introduction was also provided to TRAVELHOST's various other products.

12.  Shortly after executing the Agreements the Ford Defendants contacted TRAVELHOST advising that they had formed LJF under the laws of the State of Indiana and requesting to substitute via amendment LJF as the named Distributor/AP under the Agreements. Effective August 15, 2008, an amendment was executed by the parties to accommodate the Ford Defendants' request. Contemporaneous with execution of the amendment to the Agreements, and as a condition precedent to TRAVELHOST's agreement thereto, the Ford Defendants each individually executed a Distributorship Agreement Addendum "A" warranting and representing, in pertinent part: a) that they were the only managers of LJF and b) that the obligations under paragraph 9 of the Distributorship Agreement governing non-competition would be personally binding on each of them. On information and belief, at all times herein pertinent, the Ford Defendants were the only members in LJF, and they both actively participated in and managed all activities of LJF in connection with the rights and benefits granted by TRAVELHOST under the Agreements.

13. Pursuant to the rights afforded under the Agreements, Defendants solicited local businesses (the "advertisers") to place advertisements in the Northern Indiana local edition of TRAVELHOST Magazine, and Defendants also entered into distribution agreements with area hotels and motels, whereby the hotels and motels agreed to place issues of the local edition of TRAVELHOST Magazine in their guest rooms. By September of 2008, Defendants advised TRAVELHOST that they had already signed up approximately 5,000 hotel rooms for distribution, and that they were planning to have $20,000.00 in sales for the premier issue.

14. Defendants distributed five quarterly issues of the Northern Indiana local edition of TRAVELHOST Magazine under the Agreements (selling advertising to local retailers and distributing the magazine in local hotels/motels and, perhaps, other distribution venues) since the inception of the relationship, during which time Defendants received one hundred percent (100%) of all of the local advertising revenues generated through the local edition of the publication. During this period of time, while doing business as TRAVELHOST of Northern Indiana, Defendants were able to establish relationships with advertisers and hotels/motels by taking advantage of the goodwill associated with the TRAVELHOST name. In addition, Defendants utilized the regional space afforded to them by TRAVELHOST under the Agreements to run ads for 9 months (retaining 100% of any and all advertising revenues derived from said ads), and they at all times had the opportunity from the commencement of the Agreements to utilize $75,000.00 of regional/national advertising space credits (extended from 2 to 3 years at their request).

15. Paragraph 9 of the Distributorship Agreement expressly provides as follows:

"Distributor agrees that it will not, either directly or indirectly, engage or participate in a similar business or one competitive with Publisher, the Publication, any other authorized distributor of the Publication, or any other TRAVELHOST products within the Designated Area during the term of this Agreement or within two (2) years after termination of this Agreement."

16. The Ford Defendants have, for some time, been engaged in arranging for the publication of a new magazine (and related products) for distribution within the Designated Area in direct competition with TRAVELHOST Magazine. Commencing sometime shortly after distribution of the Winter 2010 quarterly issue of the TRAVELHOST Magazine local edition for Northern Indiana, the Ford Defendants began distribution of, and the sale of advertising into, a new publication called "INCITY" (hereafter "Competitive Publication").

17. The Ford Defendants are the publishers of the Competitive Publication, they are the managers of the new limited liability company formed in the State of Indiana for carrying on the business, and they are utilizing the same individuals as before for distribution, photography, graphic design and advertising sales. Many of the advertisers in the Competitive Publication are identical, including, in a number of instances, the same advertisements. The same welcome letter is used, with the exception of a change in name of the publication, and the Competitive Publication targets the same markets, readers and distribution channels.

18. The Defendants set out upon a scheme to commence publishing the Competitive Publication as a replacement for TRAVELHOST of Northern Indiana. They

arranged that the advertising contracts for TRAVELHOST of Northern Indiana would be taken over by the Competitive Publication as soon as they commenced distribution of the Competitive Publication, and they, and those acting in concert with them, advised the advertisers in TRAVELHOST Magazine that TRAVELHOST of Northern Indiana was "now" INCITY; that TRAVELHOST of Northern Indiana had been "replaced" by the new Competitive Publication; and that the advertisers ads would now be run in and billed by the Competitive Publication.  Similarly, they advised many of the hotels/motels with distribution agreements with TRAVELHOST Magazine that the Competitive Publication was "replacing" TRAVELHOST.  Since that time, Defendants have, on information and belief, distributed the Competitive Publication to most, if not all, of the same hotels/motels previously receiving TRAVELHOST Magazine relying upon the pre-existing distribution contracts between TRAVELHOST Magazine and those hotels/motels.

19.     Throughout the discussions with advertisers and hotels/motels in connection with the distribution and sale of advertising for TRAVELHOST Magazine, the Ford Defendants at all times held themselves out as representatives of TRAVELHOST.  In connection with the activities herein complained of with respect to the Competitive Publication, the Ford Defendants dealt with those same advertisers and hotel/motel representatives.  Throughout this period of time and continuing to this date, LJF, along with the Ford Defendants acting on its behalf, has been contractually obligated under the Distributorship Agreement to purchase and accept delivery of each quarterly issue of the local edition of TRAVELHOST Magazine, to use its best efforts to distribute

TRAVELHOST Magazine and to sell advertising into TRAVELHOST Magazine within the Designated Area, as well as to not to engage in a similar and competitive business.

20. Defendant LJF's production packet for the April 18, 2010, quarterly issue of the Northern Indiana local edition of TRAVELHOST Magazine was due for submission by March 22, 2010. No production packet was submitted, and Defendants failed to perform their contractual obligations for purchase and distribution of the April 18 quarterly issue of TRAVELHOST Magazine. The next scheduled quarterly issue of the Northern Indiana local edition of TRAVELHOST Magazine was July 18, 2010, with a production packet deadline of June 18. Again the Defendants failed to perform their contractual obligations for purchase and distribution of that quarterly issue.

21. Upon learning of the existence of the Competitive Publication, TRAVELHOST sent a cease and desist letter to the Defendants dated June 4, 2010, demanding that the Defendants immediately cease any further involvement or activities in conjunction with that Competitive Publication, directly or indirectly. Defendants were put on notice that, absent their voluntary written confirmation of compliance with the cease and desist demand, TRAVELHOST would pursue appropriate legal remedies, including, *inter alia*, damages, injunctive relief, and recovery of attorneys' fees and court costs.

22. By letter dated October 21, 2010, TRAVELHOST provided notice of Defendant LIF's defaults for failure to purchase and distribute any issues of the local edition of TRAVELHOST Magazine since early 2010, as well as by reason of the Defendants breach of the non-compete provisions of the Distributorship Agreement. When the Defendants failed to cure any of the defaults or breaches, TRAVELHOST

terminated all rights under the Agreements with TRAVELHOST by letter dated November 3, 2010. The Defendants have failed and refused to comply with the notice.

## V. FIRST CLAIM FOR RELIEF:

## BREACH OF CONTRACT

23. TRAVELHOST repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

24. Defendants have violated the terms of paragraph 9 of the Distributorship Agreement, and continue to violate that Agreement, by actively competing, directly and indirectly, with TRAVELHOST by engaging in a similar business or one competitive with TRAVELHOST Magazine within the Designated Area encompassed by that Agreement.

25. Defendant LJF has further breached the Distributorship Agreement by failing to purchase and accept delivery of two quarterly issues of the local edition of TRAVELHOST Magazine after distribution of the Winter 2010 issue, by not using its best efforts to distribute the local edition of TRAVELHOST Magazine within the Designated Area subsequent to distribution of the Winter 2010 issue of the publication (rather engaging in the active distribution of the Competitive Publication), as well as by failing to seek to obtain and maintain advertisers for the local Northern Indiana edition of TRAVELHOST Magazine (rather, through the activities of the Ford Defendants, they actively soliciting advertisers away from TRAVELHOST Magazine and into the Competitive Publication).

26. Defendant LJF has further breached the Distributorship Agreement by failing to purchase and accept delivery of the minimum number of copies of the local edition of TRAVELHOST Magazine as specified in the Agreement.

27. The aforementioned actions of Defendants have proximately caused damage to TRAVELHOST, including loss of goodwill, loss of income, loss of future earnings and profits, and other damages in an amount yet to be determined.

28. As a result of the Defendants' breaches of the Distributorship Agreement, TRAVELHOST has found it necessary to bring this legal action. In addition to damages, TRAVELHOST is entitled by contract to recovery of court costs and attorney's fees incurred pursuant to the provisions of paragraph 13.5 of the Distributorship Agreement, as well as pursuant to the provisions of Section 38.001(8) of the Texas Civil Practice and Remedies Code.

## VI. SECOND CLAIM FOR RELIEF:

## BREACH OF CONTRACT

29. TRAVELHOST repeats and realleges each and every allegation set forth in foregoing paragraphs as if fully set forth herein

30. The covenant not to compete set forth in paragraph 9 of the Distributorship Agreement is enforceable inasmuch as: a) it is ancillary to or part of an otherwise enforceable agreement; to-wit, the Distributorship Agreement; b) the two-year time limitation is reasonable; c) the geographical area and scope of activity to be restrained are reasonable as corresponding precisely to the Defendant's Designated Area; and d) the non-compete covenant does not impose any greater restraint than reasonably necessary to protect TRAVELHOST's goodwill and its business interests in the specific area of

distribution of TRAVELHOST Magazine of Northern Indiana by Defendant. Accordingly, it should be enforced in accordance with the provisions of the Texas Covenants Not To Compete Act, TEX. BUS. & COM. CODE ANN. § 15.50 et seq. (hereinafter "Act").

31. The Defendants have clearly violated the covenant not to compete contained in paragraph 9 of the Distributorship Agreement, and have thereby breached the Agreement. As a result, TRAVELHOST has and will continue to sustain damages arising from that violation in an amount presently indeterminable. Among other things, Plaintiff is entitled to recover gross profits earned by Defendants from monies diverted to their use and benefit. Plaintiff sues for recovery of all such funds and for disgorgement of any profits realized by Defendants. In accordance with Section 15.51(a) of the Act, TRAVELHOST is not only entitled to injunctive relief, but also to recovery of those damages resulting from Defendants' violations of the covenant, together with reasonable attorneys' fees and costs.

## VII. THIRD CLAIM FOR RELIEF:
### REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

32. TRAVELHOST repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

33. By reason of the conduct of Defendants in violation of the terms of paragraph 9 of the Distributorship Agreement, TRAVELHOST has suffered substantial immediate and irreparable injury in an unascertainable amount.

34. Unless enjoined by the Court, Defendants will continue to engage in the aforementioned course of action, and TRAVELHOST will suffer further irreparable

injury and damages in an unascertainable amount, in that TRAVELHOST will lose a substantial amount of business and goodwill from hotels, advertisers and potential advertisers in said Designated Area. Defendants' misappropriation of advertisers for its own benefit significantly harms the ability of TRAVELHOST and/or any other future distributor of TRAVELHOST Magazine in this market area to continue to obtain business from the advertisers and to continue to use the distribution channels set up and developed through use by Defendants of the goodwill and brand recognition of TRAVELHOST. The irreparable injury threatened to TRAVELHOST absent grant of a preliminary injunction is actual and imminent.

35. Defendants' actions, if not enjoined, threaten to put TRAVELHOST out of business in the impacted market area, and, at a minimum, will significantly impair TRAVELHOST's ability to continue business in that market area either independently or through any other distributor.

36. Granting injunctive relief will not harm Defendants or the public interest, as TRAVELHOST merely seeks to prevent and enjoin improper and contractually forbidden competition. Granting injunctive relief will promote the public interest in preserving the integrity of contract and fair competition.

37. TRAVELHOST has no adequate or speedy remedy at law for the conduct of Defendants, and this action for injunctive relief is TRAVELHOST's only means of obtaining timely and adequate relief.

## VIII. FIFTH CLAIM FOR RELIEF:

## CONSTRUCTIVE TRUST

38. TRAVELHOST repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

39. Plaintiff is entitled to the equitable remedy of constructive trust, to be imposed by the Court upon all revenues received by Defendants for their actions in violation of the Agreement set forth herein, from their use of proprietary and confidential information that they obtained from TRAVELHOST, and from their activities in contravention of the non-competition provisions of their Agreements.

## IX. ACCOUNTING

40. TRAVELHOST repeats and realleges each and every allegation in the foregoing paragraphs as if set forth herein.

41. Plaintiff is entitled to a full and complete accounting from Defendants, reflecting any and all revenues received from (a) advertisers who initially bought advertisement in the TRAVELHOST publication and who now are advertising in Defendants' competitive publication; (b) revenues received by Defendants from the unauthorized use of any proprietary or confidential information furnished them by Plaintiff; and (c) any monies diverted from TRAVELHOST, whether or not received directly by Defendants.

## X. ATTORNEYS FEES

42. TRAVELHOST has found it necessary to employ the undersigned attorneys to prosecute this action and Plaintiff is therefore entitled to the recovery of

reasonable and necessary attorneys fees incurred in connection with the claims asserted herein.

### PRAYER FOR RELIEF

WHEREFORE, TRAVELHOST, Inc. prays for judgment in its favor and against LJF and the Ford Defendants as follows:

A.  Issue preliminary injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure and § 15.51(a) of the Texas Covenants Not To Act, upon motion, effectuation of service and proper notice, ordering the Defendants, as well as all others acting in concert or participation with them, to refrain immediately and pending the final hearing and determination of this Court from, among other things: (i) making any false or misleading statements about TRAVELHOST or TRAVELHOST Magazine to any person, including current and potential advertisers; (ii) soliciting advertisements from any past or potential future advertisers on behalf of the Competitive Publication; (iii) competing with TRAVELHOST or engaging in actions in competition with TRAVELHOST anywhere within the Designated Area; (iv) having any contact with any advertisers or potential advertisers in the Competitive Publication, directly or indirectly; (v) having any contact with any hotels/motels in the Designated Area for the purpose of seeking or obtaining in-room placement of the Competitive Publication or interfering with TRAVELHOST's relationship with said hotels/motels; or (vi) having any involvement whatsoever, directly or indirectly, with the publishing, distribution, marketing, or promotion of the Competitive Publication, or any other similar publication in competition with TRAVELHOST within the Designated Area for a period of two (2) full years as provided in paragraph 9 of the Distributorship Agreement.

B.    Order and direct Defendants to turn over to TRAVELHOST a list of all advertisers, businesses, hotels, and/or motels contacted by them for or on behalf of the Competitive Publication prior to the date of the filing of this Complaint.

C.    Upon final hearing, issue a permanent injunction enjoining and restraining Defendants, and all those in active concert or participation with them, from any of the conduct set forth in the above paragraph A for a period beginning on the day of entry of said order through two years after total cessation by the Defendants of all activities in violation of paragraph 9 of the Distributorship Agreement..

D.    Enter judgment in TRAVELHOST's favor and against Defendants for an award of actual damages proven, special damages, pre and post judgment interest at the maximum legal rate, and for TRAVELHOST's costs expended herein, including reasonable attorneys' fees, as permitted by the Distributorship Agreement and/or in accordance with Texas law.

E.    Award such other and further relief as is just and proper.

Respectfully submitted,

WINSTEAD PC
1201 Elm Street
5400 Renaissance Tower
Dallas, Texas 75270
214-745-5400
214-745-5390 (Facsimile)

_____
Jay J. Madrid, Esq.    SB#12802000
jmadrid@winstead.com
Kristen L. Sherwin, Esq.    SB#24043918
ksherwin@winstead.com

ATTORNEYS FOR PLAINTIFF,

_____
John A. Price, Esq.        SB#16297700
10701 Stemmons Frwy
Dallas, Texas 75220
972-556-0541
972-432-8729 (Facsimile)

CO-COUNSEL FOR PLAINTIFF,
TRAVELHOST, INC.

%JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Travelhost, Inc.

## DEFENDANTS
James N. Ford and Lauren L. Ford
LJF Media, Inc.

(b) County of Residence of First Listed Plaintiff: Dallas County, Texas
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Valparaiso, Indiana 46385
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

RECEIVED MAR - 4 2011 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS

(c) Attorney's (Firm Name, Address, and Telephone Number)
Jay J. Madrid, Winstead PC, 1201 Elm St., Suite 5400, Dallas, Texas 75270; 214/745-5709

Attorneys (If Known): 3-11CV-453-L

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — ☐ 310 Airplane, ☐ 315 Airplane Product Liability, ☐ 320 Assault, Libel & Slander, ☐ 330 Federal Employers' Liability, ☐ 340 Marine, ☐ 345 Marine Product Liability, ☐ 350 Motor Vehicle, ☐ 355 Motor Vehicle Product Liability, ☐ 360 Other Personal Injury | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | **PERSONAL INJURY** — ☐ 362 Personal Injury - Med. Malpractice, ☐ 365 Personal Injury - Product Liability, ☐ 368 Asbestos Personal Injury Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | **PERSONAL PROPERTY** — ☐ 370 Other Fraud, ☐ 371 Truth in Lending, ☐ 380 Other Personal Property Damage, ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | **CIVIL RIGHTS** — ☐ 441 Voting, ☐ 442 Employment, ☐ 443 Housing/Accommodations, ☐ 444 Welfare, ☐ 445 Amer. w/Disabilities - Employment, ☐ 446 Amer. w/Disabilities - Other, ☐ 440 Other Civil Rights | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | | **PRISONER PETITIONS** — ☐ 510 Motions to Vacate Sentence, **Habeas Corpus:** ☐ 530 General, ☐ 535 Death Penalty, ☐ 540 Mandamus & Other, ☐ 550 Civil Rights, ☐ 555 Prison Condition | **IMMIGRATION** — ☐ 462 Naturalization Application, ☐ 463 Habeas Corpus - Alien Detainee, ☐ 465 Other Immigration Actions | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | | | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC section 1332(a)
Brief description of cause:
Breach of Distributorship Agreement, including non-compete.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  ☒ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:
(See instructions)
JUDGE _____
DOCKET NUMBER _____

DATE: 3-4-2011
SIGNATURE OF ATTORNEY OF RECORD: Jay J. Madrid

**FOR OFFICE USE ONLY**

RECEIPT # ____  AMOUNT ____  APPLYING IFP ____  JUDGE ____  MAG. JUDGE ____